**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

SHELIA COCKBURN,                                          **Case No.:**

                              Plaintiff,                 **COMPLAINT**

               -against-                                 **PLAINTIFF DEMANDS**
                                                         **A TRIAL BY JURY**
THE CITY OF NEW YORK, and THE NEW YORK
CITY DEPARTMENT OF BUILDINGS

                              Defendants.
---------------------------------------------------------------X

Plaintiff SHELIA COCKBURN ("Plaintiff"), by her attorneys, PHILLIPS &
ASSOCIATES, PLLC, hereby complains of the Defendants, upon information and belief, as
follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as
   amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); 42 U.S.C. §1981 ("Section 1981"); the
   New York State Human Rights Law, New York State Executive Law §§296 *et seq.*
   ("NYSHRL"); and the New York City Human Rights Law, the New York City
   Administrative Code §§ 8-502(a) *et seq.* ("NYCHRL") and seeks relief and damages to
   redress the injuries she has suffered as a result of being harassed, discriminated and
   retaliated against, and being subjected to a hostile work environment on the basis of her
   race and gender.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

2. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343 as this action arises
   under 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. §1981.

1

3.    The Court has supplemental jurisdiction over the claims that Plaintiff has brought under State and City law pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as one or more Defendants reside within the Southern District of New York, or the acts complained of occurred therein.

5.    By: (a) timely filing a Charge of Discrimination with the New York State Division of Human Rights, and by contemporaneously filing same with the Equal Employment Opportunity Commission ("EEOC") on June 29, 2020; (b) receiving a Notice of Right to Sue from the EEOC on November 26, 2024; (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC; and (d) contemporaneously with the filing of this Complaint, mailing a copies thereof to the New York City Commission of Human Rights ("NYCCHR") and the Office of the Corporation Counsel of the City of New York pursuant to the notice requirements of § 8-502 of the New York City Administrative Code, Plaintiff has satisfied all of the procedural prerequisites for the commencement of the instant action.  A copy of the Notice of Right to Sue is annexed hereto as Exhibit A; a copy of the transmittal letter to the NYCCHR, *et ano.*, is annexed hereto as Exhibit B.

## **PARTIES**

6.    At all relevant times herein mentioned, Plaintiff was and is a black female resident of New York County, New York.

7.    At all relevant times herein mentioned, Defendant THE CITY OF NEW YORK ("NYC") is a municipal corporation, located within the State of New York.

8.    At all relevant times herein mentioned, the New York City Department of Buildings ("DOB") is an agency of Defendant NYC, located within the State of New York.

9.      At all relevant times herein mentioned, Plaintiff was an employee of Defendants NYC and DOB.

10.     Defendants NYC and DOB, are collectively referred to herein as "Defendants."

## MATERIAL FACTS

### *Defendant discriminated against Plaintiff on the basis of her race:*

11.     On or about April 29, 2019, Plaintiff began working as a Hearing Attorney in the Administrative Enforcement Unit ("AEU") of the DOB, earning approximately $67,523 per year.

12.     As part of the AEU, Plaintiff represented Defendant DOB in administrative proceedings before the Office Administrative Trials and Hearings (OATH"), which is an administrative tribunal that provides hearings on notices of violation issued by City agencies.

13.     As a Hearing Attorney, Plaintiff worked in an incredibly fast paced, dynamic, and challenging role, with a high case volume. Additionally, Plaintiff's role required a significant amount of litigation-oriented work, making trial and court experience invaluable to the success of Hearing Attorneys.

14.     On a typical day around the time of her hiring, Plaintiff prosecuted on average fifty (50) violations per day.

15.     As part of her role, Plaintiff staffed at the Manhattan OATH office ("Manhattan Oath Office") at 280 Broadway, New York, New York 10007 ("280 Broadway") several times per month.

16.     While at 280 Broadway, Plaintiff met Hearing Attorney Eric Dalloo ("Dalloo").

17.     As Plaintiff's supervisor, Dalloo had the ability to hire, fire, discipline, or otherwise affect the terms and conditions of Plaintiff's employment or affect the decisionmaker of the same.

18. Over time, Plaintiff observed Dalloo regularly and openly discussing his personal life at 280 Broadway, including discussing his drinking habits, health issues, and sex life.

19. On several occasions, Dalloo discussed how he "enjoyed" mistreating his girlfriend by talking down to her but felt it was okay because "she liked it." Plaintiff was offended by these gender-based and misogynistic comments.

20.  Plaintiff also observed Dalloo regularly made discriminatory comments with heavy racial undertones.

21. For example, Dalloo described OATH's Bronx office, located at 3030 3rd Avenue, Bronx, New York 10455, as "ghetto" and the Manhattan OATH office as "sophisticated."

22. **Dalloo also, on many occasions, spoke to Plaintiff in "Ebonics" – an American dialectic vernacular form of English used predominantly by African Americans – or a Caribbean accent.**

23. Notably, Dalloo mimicked Caribbean accents and attempted to speak in Ebonics on many occasions when interacting with black individuals or individuals of Caribbean decent.

24. Upon information and belief, Dalloo does not identify as black.

25. Even worse, Plaintiff observed Dalloo use racial epithets in the workplace, among other highly offensive and inappropriate comments.

26. For example, Dalloo used the word "Nigga" often at work, using a Caribbean accent to greet Black OATH office workers. By way of example, Plaintiff observed Dalloo state to a Black employee, in sum and substance, "Hey you my nigga, we cool, how are you?"

27. Plaintiff further observed Dalloo speak to OATH workers using the N-word on at least four (4) occasions, including June 5, 2019, June 26, 2019, July 1, 2019, July 22, 2019, and July 24, 2019.

4

28.    Plaintiff noticed that, as time went on, Dalloo's treatment of her worsened. Plaintiff perceived this treatment to be in response to her visible discomfort with and non-participation in Dalloo's overtly discriminatory behavior.

29.    In or around July 2019, Defendant hired new attorneys to the OATH office, one or two of whom were instructed by Dalloo to shadow Plaintiff as she prepared for cases and hearings.

30.    Notably, Plaintiff realized that Dalloo was only assigning women of color to shadow her, which Plaintiff perceived to be solely due to her own race and gender.

31.    On or about July 15, 2019, Dalloo arrived at work approximately two hours late. As a result, Attorney Elana Soleimani-Aminoff ("Soleimani-Aminoff") began directing the assignment of OATH cases and individuals to shadow attorneys.

32.    When Dalloo finally arrived at work, Plaintiff witnessed Dalloo angrily instruct Soleimani-Aminoff not to assign any attorneys to shadow Plaintiff and reprimand her for attempting to do so. As a result, Plaintiff was not assigned any shadowing attorneys that day.

33.    On or about July 19, 2019, the OATH office was particularly busy and Soleimani-Aminoff assigned Plaintiff a case to assist with the high workload that day.

34.    When Soleimani-Aminoff handed Plaintiff the casefile, Dalloo approached Soleimani-Aminoff and Plaintiff from behind and yelled, "No!" before grabbing the casefile from Plaintiff's hands in an aggressive manner and reassigning it to another attorney.

35.    Over the next approximately six months, on a number of occasions, new hires requested to shadow Plaintiff. Each time, Dalloo aggressively stated, "No" and assigned the attorneys to shadow others.

36.    In addition to verbally harassing conduct, Dalloo escalated his discriminatory behavior to include unwanted and offensive physical contact.

5

37.    For example, on or about September 9, 2019, Plaintiff attended an administrative hearing at the Brooklyn OATH office located at 9 Bond Street, Brooklyn, New York 11201 ("Brooklyn OATH Office").

38.    During this hearing, the Respondent informed the Administrative Law Judge ("ALJ") overseeing the proceedings that Plaintiff's supervisor, Executive Director Shamonda Graham ("Graham"), sent Respondent an email showing intent to withdraw the DOB's case against Respondent. When asked whether Plaintiff objected to closing the case given the email, Plaintiff stated that she had no objections, at which time the matter was closed.

39.    Dalloo, who was present at the time of this hearing but waiting in the hallway, heard the exchange between Plaintiff and the ALJ from the hallway outside the Brooklyn OATH office courtroom.

40.    As Plaintiff exited the courtroom, Dalloo aggressively grabbed Plaintiff's forearm as she exited the courtroom into the hallway and attempted to drag Plaintiff into the Brooklyn OATH Office hallway as he pointed his finger in Plaintiff's face, and then towards the hallway, as he yelled "outside" in a loud and created a public spectacle.

41.    Plaintiff was shocked and humiliated by Dalloo's physical assault and repugnant display of unprofessionalism – especially as the exchange took place in front of many of Plaintiff's colleagues waiting to conduct their hearings.

42.    Once in the hallway, Dalloo admonished Plaintiff for dismissing the case. In the moment, Plaintiff apologized to Dalloo but later learned that Graham had instructed Dalloo earlier that morning to withdraw the case from OATH; however, Dalloo had failed to do so.

43.    On or about September 13, 2019, Plaintiff spoke to L2 Agency Attorney Joseph Casciano ("Casciano") regarding Dalloo and his above behavior and treatment of Plaintiff.

44.    At all relevant times herein mentioned, Casciano had supervisory authority over Plaintiff. Casciano had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decision maker of the same.

45.    In response to Plaintiff's complaint of Dalloo's behavior, Casciano stated that he too had noticed Dalloo's disparate treatment of Plaintiff and opined that Dalloo seemed to have "problems dealing with women of color."

46.    Casciano ended the conversation by stating that he would talk to other L2 supervisors and Dalloo.

47.    Besides Plaintiff's complaint to Casciano about Dalloo, Plaintiff learned that during late 2019 and early 2020, several meetings were held by supervisory attorneys to address Dalloo's behavior, and upon information and belief, other employees of Defendant NYC have filed complaints against Dalloo for similar discriminatory behavior.

48.    Following her complaint to Casciano, Plaintiff had meetings with multiple L2 attorneys. Her complaints were eventually brought to an L3 attorney and culminated in a staff meeting with Agency Attorney Jamell Isidor ("Isidor").

49.    At all relevant times herein mentioned, Isidor had supervisory authority over Plaintiff. Isidor had the authority to hire, fire, or affect the terms and conditions of Plaintiff's employment, or to otherwise influence the decision maker of the same.

50.    On or about December 27, 2019, due to ongoing complaints from Plaintiff's colleagues regarding Dalloo's behavior, Isidor held a meeting with Manhattan OATH office staff regarding Dalloo's behavior. Plaintiff was present at this meeting, along with the majority of the OATH attorney staff at the Bronx office.

51.    At that meeting, staff members, including Plaintiff, detailed to Isidor their discomfort

regarding Dalloo's use of derogatory language towards women and people of color, as well as his sex life and generally belligerent behavior.

52.    That same day, on or about December 27, 2019, Agency Attorney Sohani Khan ("Khan") filed a complaint with the agency's internal EEO office stating that Dalloo constantly boasted about his drinking, trips to Jamaica, and mistreatment of his girlfriend. Khan also detailed jokes Dalloo made about the natural hair of black women, and Dalloo's comments regarding the Bronx OATH office being "ghetto."

53.    Upon information and belief, Khan's report also detailed, among other things, that Dalloo suggested that a female attorney who stated that she didn't sleep well was up having sex with men Defendant and other gender-based harassing comments made by Dalloo in the workplace

54.    On or about January 31, 2020, Plaintiff and her colleagues participated in a follow up meeting with Isidor at the Bronx OATH Office to further discuss ongoing issues with Dalloo, including his discriminatory behavior.

55.    During that meeting, Plaintiff and others discussed Dalloo's disparate treatment of women and the extent to which Dalloo's behavior makes the entire office staff uncomfortable and upset.

***Defendants discriminated and retaliated against Plaintiff by purposefully failing to promote Plaintiff:***

56.    At the time of her hiring, Plaintiff was a seasoned attorney with thirteen (13) years of legal experience.

57.    As an ambitious attorney, Plaintiff hoped that her skills would allow her the fair opportunity to rise through the ranks of employment with Defendants and secure positions

commensurate with her experience.

58. Indeed, Plaintiff's performance with Defendant was positive, as indicated by her six-month probation evaluation form, indicating she received the highest of three rating categories for every indicator. The report further indicated that Plaintiff was an effective employee who "prioritizes work; anticipates problems; completes tasks in a timely manner. Workers effectively [with minimum] supervision; uses work hours productively; [and] organizes time well."

59. Notably, when Plaintiff was hired by Defendants, she was hired as an Agency Attorney Level 1, which was generally the entry level title of DOB attorney.

60. In time, Plaintiff saw that Defendants had posted opportunities for higher level attorney positions including Agency Attorney Level 2 ("L2") and Level 3 ("L3") roles. As such, Plaintiff applied to the job postings with Defendant in hopes to secure a role more in line with her experience.

61. On or about June 13, 2019, Plaintiff received an email that she had been selected for an interview for an L3 position with Defendant. The salary for the L3 role was, at the time, expected to be $97,500.00 per year.

62. On or about June 14, 2019, Plaintiff was interviewed by several L3 attorneys, including Ari Wax ("Wax"), Graham, and Michael Burns ("Burns").

63. On or about June 17, 2019, Burns emailed Plaintiff, asking her to call him. When Plaintiff did so, Burns explained that she was not selected for the position and that she was relatively new to the DOB but that new postings would be available for application in the future.

64. Notably, Defendants promoted other applicants who were less experienced than Plaintiff and had been working for Defendants for even shorter periods of time.

65.    After Plaintiff applied for and interviewed for the L3 position, she noticed Dalloo grew increasingly hostile towards her and acted upset that she had applied for the position.

66.    On or about February 10, 2020, Plaintiff applied for another promotion, this time for an L2 position. This position was expected to earn approximately $88,459.00 per year.

67.    Shortly thereafter, Plaintiff was notified that she would be interviewed for the L2 role, which was scheduled for February 13, 2020.

68.    On or about February 13, 2020, just before Plaintiff interviewed for the L2 role, Plaintiff spoke to Burns and inquired further as to the reason for her prior rejection from the June 13, 2019 interview for the L3 position. Burns again repeated that Plaintiff needed more experience, however, Burns also added that Plaintiff did not shake his hand, linger after the interview to chat with her interviewers, and that the interviewers simply did not find her personable.

69.    When Plaintiff attempted to explain why her experience was relevant to the L3 role she was rejected from, Burns became angry, stating, in sum and substance, "Everyone wants more money. I don't want to talk about this anymore. I need to make a call."

70.    Plaintiff interviewed for the L2 role that day; however, she was denied promotion to that role.

71.    Additionally, Plaintiff applied to another L2 role on February 21, 2020, however, she was not selected for this role either.

72.    At this point, Plaintiff had been rejected three times for promotional opportunities and became one of few employees besides recent law graduates or unbarred attorneys who had not been promoted to an L2 position.

73.    Furthermore, on or about February 30, 2020, Plaintiff realized that three L1 employees who started after Plaintiff were promoted to L2, even with less than three months of experience with Defendants. In contrast, Plaintiff had been employed with Defendants for a full year and had fourteen (14) years of attorney experience.

74.    Plaintiff understood Defendant's patent refusal to promote her to be retaliation in response to her opposition to Dalloo's discriminatory and harassing behavior and her reports of same to other supervising attorneys such as Casciano.

***Plaintiff officially reports Defendant's discriminatory employment practices***

75.    After being denied multiple promotions in favor of significantly less experienced candidates, as well as being subjected to Dalloo's discriminatory behavior, Plaintiff formally complained of the animus against women and people of color in Defendant's OATH office.

76.    On or about June 29, 2020, Plaintiff reported Dalloo's discrimination and Defendant NYC's failure to promote Plaintiff on the basis of her race and gender through two separate means – first through New York City's Internal Affairs and Discipline ("IAD") department and by a filing with the New York State Division of Human Rights.

77.    In Plaintiff's seven-page complaint, she detailed in specificity Dalloo's derogatory comments regarding women, offensive and discriminatory use of racial epithets and ethnic caricatures, his overt and inappropriate discussions of his sex life, and the overarching culture at the Manhattan OATH office that underpins this behavior and perpetuates it.

78.    Plaintiff further complained specifically regarding Defendant's discriminatory failure to promote Plaintiff and that, despite her years of substantive experience in administrative

law and litigation, attorneys with significantly less experience and tenure were promoted over her – many of whom were men or white.

79.    Plaintiff remained an L1 attorney throughout her entire tenure with Defendant.

80.    On or about December 5, 2022, Plaintiff resigned her position with Defendant.

81.    **As demonstrated by the foregoing, Plaintiff was discriminated against and refused a promotion based solely on her sex/gender (female) and her race (black) and in retaliation for Plaintiff's complaints of discrimination and retaliation.**

82.    As a result of Defendants' actions, Plaintiff felt and feels humiliated, degraded, victimized, embarrassed, and emotionally distressed because of the discrimination she experienced.

83.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, including retirement contributions, growth potential within the company, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional distress.

84.    Defendants' intentional actions and conduct caused harm to Plaintiff.

85.    As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court.

86.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

87.    As such, Plaintiff demands punitive damages against Defendants.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

88.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

89.    This claim is authorized and instituted pursuant to the provisions of Title VII for relief based upon the unlawful employment practices of Defendant NYC. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race and gender (black/female).

90.    Defendant engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff because of her race and sex/gender (black/female), thus denying her the benefits of her employment and a promotion.

## AS A SECOND CAUSE OF ACTION
## RETALIATION UNDER TITLE VII

91.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

92.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> (1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

93.    Defendants engaged in unlawful employment practices prohibited by Title VII by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION UNDER SECTION 1981

94.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

95.    Section 1981 states in relevant part as follows:

(a) Statement of equal rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

(b) "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

96.    Section 1981 also prohibits retaliation for engaging in protected activities.

97.    Defendant engaged in unlawful employment practices by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against Plaintiff because of her race (Black) as provided under Section 1981 and has suffered damages as set forth herein, sex/gender, and participation in protected activities, thus denying her the benefits of her employment and a promotion..

## AS A FOURTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYSHRL

98.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

99.    Executive Law § 296 provides that,

It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, gender identity or expression, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate

14

against such individual in compensation or in terms, conditions or privileges of employment

100. Defendant engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her race and sex/gender (black/female), thus denying her the benefits of her employment and a promotion.

## AS A FIFTH CAUSE OF ACTION
## RETALIATION UNDER THE NYSHRL

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

102. Executive Law § 296 provides that, "7. It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

103. Defendant engaged in unlawful discriminatory practices by discriminating against Plaintiff because of his opposition to the unlawful employment practices of the Defendants.

## AS A SIXTH CAUSE OF ACTION
## DISCRIMINATION UNDER THE NYCHRL

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

105. The Administrative Code of City of New York § 8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, **gender**, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

106.    Defendants engaged in an unlawful discriminatory practice in violation of the Administrative Code of City of New York § 8-107(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her race and sex/gender, thus denying her the benefits of her employment and a promotion.

## AS A SEVENTH CAUSE OF ACTION
## RETALIATION UNDER THE NYCHRL

107.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

108.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

109.    Defendants engaged in unlawful discriminatory practices in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Defendants.

## JURY DEMAND

110.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by the Title VII of the Civil Rights Act of 1964, Section 1981, New York State Human Rights Law, and the New York City Administrative Code, in that Defendants discriminated against Plaintiff and failed to promote her on the basis of her race and gender and retaliated against her for engaging in one or more protected activities.

16

B.      Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.      Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State law claims;

D.      Awarding Plaintiff compensatory damages for mental, emotional, and physical injury; distress; pain and suffering and injury to her reputation in an amount to be proven;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

G.      An award of prejudgment and post judgment interest, costs, and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties; and

H.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy the Defendants' unlawful employment practices.

Dated: New York, New York
       January 22, 2025

**PHILLIPS & ASSOCIATES, PLLC**
**ATTORNEYS AT LAW**

By: _____
Brittany A. Stevens, Esq.
Morgan L. Mickelsen, Esq.
Blake L. Ferris, Esq
*Attorneys for the Plaintiff*
45 Broadway, 28th Floor
New York, New York 10006
T: (212) 248 –7431
F: (212) 901–2107
bstevens@tpglaws.com
mmickelsen@tpglaws.com
bferris@tpglaws.com